IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:14-CV-104-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARRELL TRAVIS, | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court to further an oral ruling made at the time of sentencing, held February 23, 2016. In particular, the court overruled defendant's objection to his recommended base offense level of 20, resulting from his prior conviction of a crime of violence, under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(a)(4)(A). The basis for the court's decision on defendant's objection is memorialized herein.

## BACKGROUND

On November 12, 2014, a grand jury returned an indictment charging defendant with one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) & 924. On May 12, 2015, the grand jury returned a superceding indictment, which charged defendant with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) & 924 ("Count One"); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(8) & 924 ("Count Two"). On September 15, 2015, defendant, with benefit of written plea agreement, pleaded guilty to Count Two of the superceding indictment, with Count One to be dismissed at sentencing.

On February 16, 2016, the United States Probation Office (the "Probation Office") issued

its Presentence Investigation Report ("PSR"), calculating defendant's criminal history category as III, base offense level as 20, and total offense level as 23.[1] Based on the Probation Office's calculations, the advisory Sentencing Guidelines recommended a term of imprisonment of 57 to 71 months.

As is relevant here, the Probation Office arrived at defendant's base offense level calculation by applying U.S.S.G. § 2K2.1(a)(4)(A), which provides for a base offense level of 20 where "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." § 2K2.1(a)(4)(A). The Probation Office's recommendation was grounded in § 2K2.1(a)(4)(A)'s "crime of violence" prong. In particular, the Probation Office recommended the court employ the increased base offense level through reliance on defendant's February 16, 2012, conviction for assault by strangulation in Wake County, North Carolina, Superior Court. Under North Carolina law, assault by strangulation inflicting physical injury is a felony. N.C. Gen. Stat. § 14–32.4(b). Defendant's objection followed. At sentencing, the court overruled defendant's objection and sentenced him to 57 months imprisonment. Count One was dismissed pursuant to the terms of defendant's plea agreement.

**COURT'S DISCUSSION**

Section 2K2.1(a)(4)(A) advises the court to apply a base offense level of 20 where "the defendant committed any part of the instant offense" after a felony conviction of a "crime of violence." § 2K2.1(a)(4)(A). To define "crime of violence," § 2K2.1 cross references the definition of that term used in the career offender enhancement, § 4B1.2(a). See § 2K2.1 cmt. 1. Thus, a

---

[1] The Probation Office recommended a two level increase where the offense involved at least three but not more than seven firearms, U.S.S.G. § 2K2.1(b)(1)(A), and a four level increase for possession of a firearm with an altered or obliterated serial number. § 2K2.1(b)(4)(B). In addition, the Probation Office recommended a three point reduction for acceptance of responsibility. § 3E1.1.

crime may be one "of violence" if it is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a).

To determine whether defendant's assault by strangulation conviction is a "crime of violence," the court "approach[es] the issue categorically" and endeavors to determine whether even the most innocent conduct criminalized by the statute would trigger application of the sentencing enhancement. United States v. Montes-Flores, 736 F.3d 357, 364 (4th Cir. 2013). The statute at issue provides "Unless the conduct is covered under some other provision of law providing greater punishment, any person who assaults another person and inflicts physical injury by strangulation is guilty of a Class H felony." N.C. Gen. Stat. § 14–32.4(b). As explained by North Carolina's Court of Appeals, "[t]he offense of assault by strangulation requires only that an individual assault another person and inflict physical injury by strangulation." State v. Braxton, 183 N.C. App. 36, 41 (2007); accord State v. Williams, 201 N.C. App. 161, 170 (2009).

An assessment of whether assault by strangulation categorically requires the "use of physical force" requires the court to analyze two discrete aspects of the "use of physical force" provision. First, the crime must have required physical, "violent force," defined as "force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010). Second, defendant must have "used" that "violent force." In other words, defendant must have purposefully or knowingly applied the requisite force against his victim; negligently or recklessly applied force falls outside the scope of the "use of physical force" provision. United States v. Vinson, 805 F.3d 120, 125 (4th Cir. 2015); Garcia v. Gonzales, 455 F.3d 465, 469 (4th Cir. 2006).

Turning to the "violent force" requirement, it is met easily by the crime at issue here.

3

"Strangulation" is defined as "a form of asphyxia characterized by closure of the blood vessels and/or air passages of the neck as a result of external pressure on the neck brought about by hanging, ligat[ure] or the manual assertion of pressure." State v. Lanford, 225 N.C. App. 189, 195 (2013). By definition, the crime requires physical injury. See N.C. Gen. Stat. § 14–32.4(b); Williams, 201 N.C. App. at 170. This satisfies the physical or "violent" force requirement.

The second element also is met because the crime of assault by strangulation necessarily requires the purposeful or knowing application of force against the victim. "Strangulation" can be accomplished in only one of three ways: hanging, ligature, or manual strangulation. See Lanford, 225 N.C. App. at 195. The proper meaning of these terms may be derived from their dictionary definitions, where applicable. See id. at 195–96; Braxton, 183 N.C. App. at 43. For example, "hanging" is defined as "[t]he killing of someone by suspending the person above the ground by a rope around the person's neck." Hanging, Black's Law Dictionary (10th ed. 2014). Alternatively, it may be defined as "the act of killing someone by . . . a rope tied around the neck." Merriam-Webster, hanging, available at http://www.merriam-webster.com/dictionary/hanging (last accessed Feb. 29, 2016). Although instances where the act of hanging results in the victim's death specifically are exempted from the reach of § 14–32.4(b), the available definitions of the term "hanging" make clear that "hanging" requires suspending the victim from a rope. Such an application of force cannot be recklessly or negligently accomplished.

The same is true with regard to assault by strangulation accomplished by use of a "ligature." A "ligature" is "something that is used to bind; specifically: a filament (as a thread) used in surgery." Merriam-Webster, ligature, available at http://www.merriam-webster.com/dictionary/ligature (last accessed Feb. 29, 2016). Additionally, a "ligature" is "[a] thing used for tying or

4

binding something tightly." Oxford English Dictionary, ligature, available at http://www.oxforddictionaries.com/definition/english/ligature (last accessed Feb. 29, 2016). Thus, as with hanging, strangulation by ligature requires the knowing or purposeful application of force to the person of another. Specifically, strangulation by ligature demands the binding of the victim's neck. Considering that strangulation by ligature requires tying an object around the victim's neck, strangulation by ligature requires the purposeful or knowing application of force to the victim.

Finally, manual strangulation, also called "manual assertion of pressure," requires the purposeful or knowing application of force to the victim. Although "manual strangulation" is not susceptible to a precise definition, commentary elsewhere found in the law, about strangulation generally, and manual strangulation specifically, makes clear that "manual strangulation" requires more than a negligent or reckless application of force. As North Carolina's Court of Appeals has noted, to "strangle" requires "serious[]" obstruction of "normal breathing." Lanford, 225 N.C. App. at 195. In addition, the prosecutor may carry its burden of proving strangulation by introducing evidence that the victim "received cuts and bruises on her neck as a result of being strangled." State v. Little, 188 N.C. App. 152, 157 (2008). The amount of pressure required to commit assault by strangulation, as well as the necessary resulting harm, are indicative of, at least, a knowing application of force against the victim, even in cases where strangling the victim is not the defendant's conscious object. See Lanford, 225 N.C. App. at 195 (affirming conviction for assault by strangulation where defendant pulled victim's head back, making it difficult for the victim to breathe).

Moreover, the North Carolina Supreme Court previously has defined "manual strangulation" as "a continued murderous effort on the part of the assailant." State v. Artis, 325 N.C. 278, 319–20

5

(1989), opinion vacated on other grounds, Artis v. North Carolina, 494 U.S. 1023 (1990) (vacating for reconsideration in light of McKoy v. North Carolina, 494 U.S. 443 (1990) (vacating death sentence in light of an unconstitutional sentencing scheme that precluded jurors from considering mitigating evidence)). Artis persuasively defines manual strangulation such that the term only reaches the defendant's purposeful or knowing application of force against the victim. See generally State v. Williams, 315 N.C. 310, 322 (1986) (affirming denial of second degree murder instruction; approving of expert definition of strangulation as a "finishing type of assault, done to silence the individual").

The limited means by which a defendant can accomplish assault by strangulation set the crime apart from other, more open-ended assault crimes, which typically are not "crimes of violence" because they can be consummated by a criminally negligent application of force. See Vinson, 805 F.3d at 126; State v. Jones, 353 N.C. 159, 164–65 (2000). In most assault cases, the necessary use of force may be either intentional or criminally negligent. For example, in Jones the North Carolina Supreme Court sustained the defendant's conviction for assault with a deadly weapon inflicting serious injury ("AWDWISI"), where the defendant's conviction arose out of a criminally-negligent drunk driving incident that resulted in an automobile collision. Id. The court reasoned that the "intent to injure" required for an AWDWISI conviction could be inferred from the defendant's criminally negligent acts. Id. In addition, the Fourth Circuit credited this reasoning in its Vinson opinion, where it stated that "North Carolina law permits convictions for all forms of assault, including completed-battery assault, in cases where the defendant's conduct does not rise even to the level of recklessness." Vinson, 805 F.3d at 126.

Nevertheless, the court does not view the broad principles announced in either Jones or

6

Vinson as controlling on the facts of this case. First, with respect to Vinson, the Fourth Circuit's holding addressed only misdemeanor assault convictions. See id. at 124–26. Thus, inasmuch as the court's statement "North Carolina law permits convictions for all forms of assault . . . in cases where the defendant's conduct does not rise even to the level of recklessness" can be read to address every conceivable action criminalized as assault under North Carolina law, it is dicta and this court need not adhere to the Fourth Circuit's statement where there exists a persuasive reason to hold otherwise. Second, the ability to consummate an assault through a culpably negligent application of force does not apply in every case; the North Carolina Supreme Court recognized a limitation on the ability of criminally negligent conduct to satisfy assault's "intent" element. See 353 N.C. at 166. In particular, the court observed "our analysis of defendant's conviction for AWDWISI demonstrates that culpable or criminal negligence may be used to satisfy the intent requisites for certain dangerous felonies, such as manslaughter, assault with a deadly weapon with intent to kill and AWDWISI." Id. (emphasis added).

Finally, the court finds the statutory and judicially-created restrictions on the manner in which assault by strangulation can be accomplished to be a compelling consideration, distinguishing this crime from other, generic forms of assault. For example, as evidenced in Jones, AWDWISI may be accomplished in myriad ways; however, for purposes of a categorical analysis, the fact that it may be accomplished in a single, criminally negligent manner, by a collision when driving drunk, removes the entire crime from the scope of § 4B1.2(a)(1). Because AWDWISI may be accomplished negligently, it does not categorically require the "use" of physical force. The same is true of the misdemeanor assault crime analyzed in Vinson. The crime may be accomplished in a variety of ways, including an accidental application of force. See Vinson, 805 F.3d at 126; State

7

v. Dammons, 120 N.C. App. 182, 185–86 (1995). By contrast, the instant offense may only be accomplished in three ways: hanging, ligature, or manual strangulation. Each method, as discussed above and, separate and apart from the dictionary definitions previously provided, as is evident upon application of a rule of reason, requires the knowing or purposeful application of violent force to the person of another. The circumscribed definition of strangulation does not permit the unusual, negligently caused injury, such as is the case with AWDWISI.

Defendant does not address squarely the applicability of the "use of physical force" clause. Rather, defendant lodges a single, broad-based objection to application of any portion of § 4B1.2(a) that does not turn on use of the enumerated offenses of "burglary of a dwelling, arson, or extortion [or] . . . use of explosives." U.S.S.G. § 4B1.2(a)(2). Defendant grounds his objection in Johnson v. United States, __ U.S. __, 135 S. Ct. 2551 (2015). However, the language of Johnson renders defendant's argument without support.

In Johnson, the Supreme Court held unconstitutional the so-called residual clause of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e). The residual clause was part of the ACCA's definition of "violent felony," and provided that the term "violent felony" included any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(b)(ii). Johnson's effect on the identically-worded provision of the career offender enhancement, U.S.S.G. § 4B1.2(a)(2), is an open question in this circuit. But compare United States v. Madrid, 805 F.3d 1204 (10th Cir. 2015) (holding career offender enhancement's residual clause unconstitutional in light of Johnson), with United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015) (holding Johnson had no effect on advisory Sentencing Guidelines).

In any case, defendant's argument goes beyond the "standard" Johnson argument, typified

8

by <u>Matchett</u> and <u>Madrid</u>. Instead, defendant contends that the career offender enhancement's "use of physical force" language also was drawn into question by <u>Johnson</u>. Unfortunately, upon a review of the plain language of the <u>Johnson</u> opinion, the court is compelled to disagree. For example, in breaking with its past precedent, the Court analyzed its four prior opinions interpreting the ACCA's residual clause and concluded that those cases achieved inconsistent, unworkable results. <u>See</u> 135 S. Ct. at 2558–60. Moreover, the Court plainly stated that it was the residual clause's "otherwise involves conduct that presents a serious potential risk of physical injury to another" language that failed to give fair notice to the public at large and invited arbitrary enforcement of the law by judges. <u>See</u> <u>id.</u> at 2557. The career offender clause at issue here does not involve such open-ended language. Accordingly, defendant's objection properly is overruled.[2]

## CONCLUSION

Based on the foregoing, defendant's objection to his base offense level of 20, reached upon application of U.S.S.G. § 2K2.1(a)(4)(A), is OVERRULED.

SO ORDERED, this the 1st day of March, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[2] Defendant also objects to the classification of his assault by strangulation offense as a "felony," that is, a crime for which he received more than one year in prison, under North Carolina's Justice Reinvestment Act. <u>See</u> U.S.S.G. § 4B1.2(a). However, defendant's objection is foreclosed by the Fourth Circuit's opinion in <u>United States v. Barlow</u>, 811 F.3d 133 (4th Cir. 2015).

9

Case 7:14-cr-00104-FL   Document 75   Filed 03/01/16   Page 9 of 9